**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ELIZABETH CAMPBELL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.   ) | Case No.  22CV4736 |
| ) | |
| CATHOLIC CHARITIES DIOCESE OF ) | Judge Lindsay C. Jenkins |
| JOLIET, ) | |
| ) | |
| Defendant. ) | |

## DEFENDANT'S LR. 56.1 STATEMENT OF MATERIAL FACTS

Pursuant to Local Rule 56.1, Defendant, Catholic Charities Diocese of Joliet? ("CCDOJ" or "Defendant"), through its undersigned counsel, submits this Local Rule 56.1 Statement of Undisputed Material Facts in Support of Defendant's Motion for Summary Judgment.

### Jurisdiction and Venue

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and venue is proper because Plaintiff was employed by CCDOJ in this judicial district.  (Dkt #18 ¶¶2-3 & Dkt #25 P1)

### About CCDOJ

2. CCDOJ is a faith-based organization providing services to people in need through various programs in five counties in Illinois, including Will County, DuPage County, Kankakee County, Ford County and Iroquois County. (Exhibit A - Fudge-White Decl. ¶3) According to Plaintiff, CCDOJ has over 200 employees. (Exhibit B – Pl. Dep. P68 L8-12, P85 L20-P86 L17)

3. CCDOJ's programs include Head Start, Early Head Start, home-based, expectant mothers, and daycare programs for children up to five years-old and their low-income families. Children participate in developmentally and educationally appropriate activities; receive medical

and dental care; have healthy meals and snacks; and enjoy playing indoors and outdoors in a safe setting. Parental involvement is encouraged. Family Service Workers provide support services and assist in securing needed community resources. (Ex. A - Fudge-White Decl. ¶4)

4. Kathleen Langston (Caucasian) is the Executive Director of CCDOJ, Theresa Ross (African American) was the Assistant Director of Human Resources in 2022, Kathy Fudge-White (African American) is the Director of the Early Childhood Services Division of CCDOJ, and in 2022, Dr. Renanta Davis (African American) was CCDOJ's Assistant Director of Home Based Operations. (Exhibit A - Fudge-White Decl. ¶¶2, 5; Exhibit B – Pl. Dep P40 L22-23, P44 L5-7, P49 L20-22, P162 L10-11)

5. Dr. Davis was Plaintiff's direct supervisor for three or four months in 2021 and then again from April of 2022 until Plaintiff's termination. (Exhibit B – Pl. Dep. P135 L17 – P137 L17)

6. CCDOJ has Head Start Policy Council, which consists of parent and community representatives. One of the roles of the Head Start Policy Council is to consider staff recommendations regarding the termination of employment of CCDOJ employees. (Exhibit A - Fudge-White Decl. ¶¶7-8; Exhibit B – Pl. Dep. P44 L14 - P45 L2)

### CCDOJ's Policies

7. CCDOJ maintains employment policies which include the following Standards of Behavior, which if not met may result in discipline, up to and including immediate termination of employment?: Absence from work for three (3) consecutive scheduled work days without reporting the absences and the reason(s) for the absences; Continued reported absence from work without establishing a Leave of Absence approved by the Agency; and Failure to return to work at the end of an approved Leave of Absence or an approved extension of leave. (Exhibit B - Pl. Dep. Ex. 22 P2-3)

8. CCDOJ maintains a Nondiscrimination Policy, an Anti-Harassment Policy and a

2

Whistleblower Policy (Exhibit B - Pl. Dep. Exs. 3-5) and Plaintiff received these HR policies (*Id*. at P88 L6 – P89 L24, P113 L1-18) The Anti-Harassment Policy prohibits harassment based upon protected characteristics and establishes a complaint reporting procedure. (Exhibit B - Pl. Dep. Ex.4 P3)

9. Plaintiff received harassment training in the summer of 2021. (Exhibit B – Pl. Dep. P56 L5 – P57 L5)

**Plaintiff and Her Employment at CCDOJ**

10. Plaintiff was employed by CCDOJ from on or about October 10, 2001 to March 14, 2003, and then from November 1, 2004 to August 4 or 5, 2022. (Exhibit B – Pl. Dep. P86 L21, P104 L3-17, P111 L9-20, P180 L14-16; Pl. Dep. Exs. 2, 6, 8-9 & 22 P4)

11. Plaintiff identifies as African American. (Dkt. #1 P4; Exhibit B – Pl. Dep. P34 L3)

12. On June 4, 2014, Plaintiff was promoted to the position of Early Head Start Home Visitor (Exhibit B – Pl. Dep. P119 L21 – P129 L9, Pl. Dep. Ex. 13) and on or about August 15, 2016, her position was changed to Early Head Start Visitor/Parent Child Educator (Exhibit B - Pl. Dep. P16-18).

13. The position of Early Head Start Home Visitor/Parent Child Educator is very important to the Head Start Program because it is the primary contact between CCDOJ and the participants in the Program. There are about six employees in this position and each of the employees maintains a case load of at least 12 children/families. When employees in this position are absent from work, the children/families either go unserved or if they are reassigned to another employee, risking overburdening the other employee, which then again often results in some Program participants not receiving appropriate or effective services. (Exhibit A - Fudge-White Decl. ¶12; Exhibit B – Pl. Dep. P148 L1-5)

14. Plaintiff's duties as a Visitor/Parent Child Educator included engaging in "weekly

3

home visits with all families on the assigned caseload…" (Exhibit B – Pl. Dep. P133 L5 – 22, Pl. Dep. Ex. 16 P3; *see also* Exhibit B – Pl. Dep. P142 L19 - P143 L7 and P144 L19 – P145 L5, Pl. Dep. Exs. 17 P5 & 18 P5)

### Plaintiff's Attendance and Discharge

15. Plaintiff was off work from April 12, 2022, through her termination on August 5, 2022. (Exhibit A - Fudge-White Decl. ¶15; Exhibit B – Pl. Dep. P176 L4 – P178 L11, P191 L17-23)

16. On April 21, 2022, Ross sent Plaintiff an email reminding her of the obligation to submit a document from a medical provider after an absence of three days or more and that HR had not received such a document. (Exhibit A - Fudge-White Decl. ¶16 & Ex.A)

17. On April 22, 2022, Plaintiff submitted a doctor's note to be excused from work for one week, but the note did not provide a medical justification for the absence. (Exhibit A - Fudge-White Decl. ¶17)

18. On April 22, 2022, Plaintiff also presented a doctor's note stating that she can only return to work after imaging results are received. (Exhibit A - Fudge-White Decl. ¶18)

19. On May 26, 2022, Ms. Ross sent Plaintiff a letter about Plaintiff's "excessive absences," concluding:

> By no later than Tuesday, May 31, 2022, you must contact Human Resources and/or your direct supervisor to discuss the circumstances of your leave of absence. You must begin complying with our call-in procedures should you continue to be absent. The occasional emails and other communications you have sent us since your unapproved leave of absence began are insufficient to be compliant with our policies and practices.

(Exhibit A - Fudge-White Decl. ¶19 & Ex.B)

20. On June 2, 2022, Plaintiff presented a doctor's note purporting to excuse her from work for two weeks, with an anticipated return to work date of June 16, 2022. (Exhibit A - Fudge-White Decl. ¶20)

4

21. On June 15, 2022, Dr. Davis sent Plaintiff a letter about her continued absences, giving Plaintiff until June 22, 2022 to "contact Human Resources to discuss the circumstances of your leave of absence" and expressly warning that Plaintiff must "begin complying with our call-in procedures should you continue to be absent." (Exhibit A - Fudge-White Decl. ¶21 & Ex.C)

22. On June 16, 2022, Plaintiff failed to submit a "fit for duty notice" and was therefore not allowed to return to work. (Exhibit A - Fudge-White Decl. ¶22)

23. On the afternoon of June 16, 2022, Plaintiff was sent an email specifically reminding her to submit a document from her "medical provider stating that you are fit for duty to return to work – with or without accommodations," reminding her that her absences since April 11, 2022 remain unexcused and stating that "Absent further information, the Agency will treat these absences in accordance with its normal leave and attendance policies." (Exhibit A - Fudge-White Decl. ¶23 & Ex.D)

24. On July 1, 2022, Plaintiff was assessed for return to work and she thereafter submitted a return to work note with restrictions of office work only, with an estimated duration of 4-6 weeks; however, she was not allowed to return to work because she could not perform her essential job duties with that restriction. (Exhibit A-Fudge-White Decl. ¶25)

25. On July 19, 2022, Plaintiff submitted another doctor's note, stating that she was on work restrictions until further notice. (Exhibit A - Fudge-White Decl. ¶26)

26. On or about August 2, 2022, Ross sent a letter to the Head Start Policy Council recommending that Plaintiff be discharged. (Exhibit A - Fudge-White Decl. ¶27 & Ex.E)

27. The Head Start Policy Council ("Policy Council") met on August 4, 2022. Minutes of the meeting were prepared and maintained pursuant to CCDOJ's policy. (Exhibit A - Fudge-White Decl. ¶28 & Ex.F)

28. During the Policy Council Special Meeting on August 4, 2022, the people present

5

included the Council members, Ross, Plaintiff, Plaintiff's union representative, someone from the Union's office and perhaps others. (Exhibit A - Fudge-White Decl. ¶29 & Ex.F; Exhibit B – Pl. Dep. P174 L24 – P175 L15)

29. During the Special Council meeting on August 4, 2022, Ross spoke about the reasons for the termination of the Plaintiff. Plaintiff had to leave, and the meeting continued with her union representatives speaking on her behalf, with Plaintiff's agreement. At the conclusion of the meeting, the Policy Council voted unanimously to approve the decision to terminate Plaintiff's employment with CCDOJ. (Exhibit A - Fudge-White Decl. ¶30)

30. Plaintiff was discharged from CCDOJ based upon her unexcused absences in 2022; her race and her religion were not factors. (Exhibit B - Pl. Dep. Ex. 22 P5; Exhibit A - Fudge-White Decl. ¶31)

### Plaintiff's Harassment and Discrimination Claims

31. Plaintiff has alleged that she was harassed and discriminated against based upon her race and her religion, and CCDOJ adamantly denies that there was any such harassment or discrimination. (Exhibit A - Fudge-White Decl. ¶32)

32. In August or September 2021, Plaintiff complained that she was being harassed and discriminated against because of her race or religion. (Exhibit B – Pl. Dep. P57 L6-8)

33. On April 20, 2022, Plaintiff filed a Charge of Discrimination with the EEOC alleging harassment and discrimination based upon her race and religion. (Exhibit B - Pl. Dep. Ex. 23 P20) Specifically, Plaintiff alleged that CCDOJ failed to promote the Plaintiff, to reasonably accommodate the Plaintiff's religion, failed to stop harassment, and retaliated against the Plaintiff because she did something to assert rights protected by Title VII. (Dkt #18 ¶10 & 12)

34. Plaintiff also alleges that she was discriminated against on the basis of her race and religion because she was reprimanded, because her work was scrutinized, because she was not

6

allowed to work from home and because she was discharged. (Dkt #18 ¶15-16)

35. Langdon, Fudge-White and Ross have never made any derogatory comments to Plaintiff because of her race or religion and Plaintiff has never had any issues with them. (Exhibit B – Pl. Dep. P44 L4-9, P44 L3-4, P44 L8-13, P46 L4-6, P49 L5-19)

36. Dr. Davis has never made any derogatory comments to Plaintiff because of her race (Exhibit B – Pl. Dep. P50 L2-4, P236 L6-9) and has never said anything to suggest that she did not like other African Americans (*id*. at P162 L12-14).

37. On or about March 29, 2022, Plaintiff wrote to Fudge-White, "I am spiritually, emotionally, and physically not able to do this job anymore and I am waiting on God to give me a recruitment job." (Exhibit B – Pl. Dep. p171 L21 – p172 L3)

38. Plaintiff alleges that Dr. Davis during a video meeting in June of 2021, Dr. Davis made a comment about not knowing what to do and when Plaintiff suggested that the group pray, Dr. Davis responded with words to the effect that "you make people think that you're holier than – than the other folks." (Exhibit B – Pl. Dep. P50 L5 -P51 L16)

39. Plaintiff did not report the comments to anyone at CCDOJ at the time, and instead waited to do so until about August or September of 2021 (*id*. at P53 L19-21, P54 L8-10, P54 L11 – P56 L3, P57 L6-8) and Plaintiff testified that she could not recall any other offensive comments Dr. Davis made to her after June 2021 (*id*. at P202 L14 - P203 L6 & L13-17)

40. Plaintiff received a corrective action notice in June 2021, but she was never demoted and it did not result in the loss of any money to Plaintiff. Plaintiff cannot recall receiving any such discipline thereafter. (Exhibit B – Pl. Dep. P205 L13-23, P216 L4-11)

41. Plaintiff also claims that sometime in July or August of 2021, Dr. Davis made a statement to the effect of "leave God out of it," but Plaintiff cannot recall the context in which the statement was made, and she did not report this statement to HR. (Exhibit B – Pl. Dep. P59 L6 –

7

P60 L24, P61 L20-22)

42. Plaintiff complains that although she went on a mission trip in 2017, her request to go on a paid "Filipino mission trip" was denied and she thinks that was retaliation even though the trip was not "open to Head Start" and Plaintiff cannot identify any similarly situated employee who were allowed to go. (Exhibit B – Pl. Dep. P203 L22 – P205 L2)

43. Plaintiff claims that during video conference meetings, Dr. Davis "would let people of Caucasian race to speak up. And when it was time for me or others like me, or even some of my Hispanic brothers and sisters that – she would cut it off." (Exhibit B – Pl. Dep. P63 L16 – P64 L4) Plaintiff never reported this to HR. (*Id*. at P64 L11-15) Plaintiff further testified that she was the only one who was "cut out" of the meetings, that she attributed it to favoritism. (*Id*. at P65 L14 - P66 L23)

44. Plaintiff testified that Dr. Davis' activity in the meetings was the only conduct that Plaintiff believed constituted discrimination based upon her race or her religion. (Exhibit B – Pl. Dep. P65 L14-20)

45. Plaintiff alleges that Dr. Davis "stifled" Plaintiff from speaking about her religion by "just making comments or presence you know, feeling threatened because she's there, because I know she's going to have something to say or another corrective action"; however, Plaintiff admits that she was never written up for talking about Jesus. (Exhibit B – Pl. Dep. P199 L21 – P200 L14)

46. Regarding the promotion issue, Plaintiff alleges that she was not promoted to a recruitment specialist position (Exhibit B - Pl. Dep. P197 L4-11); however, Plaintiff admits that during the term of her employment, CCDOJ was not seeking to create or fill the recruiter position and Plaintiff never applied for the position. (Exhibit B - Pl. Dep. P197 L12 – P198 L5, P199 L17-20).

47. Plaintiff alleges that she was harassed by Dr. Davis' comments about her performance and by Dr. Davis not allowing Plaintiff to list becoming a recruitment specialist on the professional development portion of her evaluation form, although when asked if Plaintiff believed that Dr. Davis' actions were because of her race or religion, Plaintiff testified that she did not know why. (Exhibit B – Pl. Dep. P93 L13 – P97 L1) Indeed, Plaintiff expressly testified that harassment she experienced from Dr. Davis was not based on Plaintiff's race or religion, but "I look at it as harassment though." (*Id*. at P196 L13-19)

48. Regarding the religious accommodation claim, Plaintiff testified that no one at CCDOJ ever prevented her from praying at work. (Exhibit B - Pl. Dep. P77 L20-22)

49. Plaintiff claims that she was off work from November 2021 through January 2022 and that immediately after her return to work she was required to take vacation time during a snow storm on or about February 1-3, 2022, and was not allowed to work from home for two days, but she does not know why Dr. Davis made that decision. (Exhibit B – Pl. Dep. P186 L16 – P189 L7, P190 L19 - P191 L4)

50. Plaintiff also complains that after she was off work from November 2021 through January 2022, twelve of her files were subjected to review whereas another employee only had two files reviewed, but the other employee had not been off work for three months. Plaintiff admits that the file review did not result in any disciplinary or corrective action against her. (Exhibit B – Pl. Dep. P210 L3-24, P219 L4-17, P222 L2-6)

51. Plaintiff also complains that Dr. Davis harassed and bullied Plaintiff because of her race when Dr. Davis caller her Elizabeth "because I like to be called Liz" even though Dr. Davis referred to other African Americans using their preferred nicknames, and Plaintiff testified that she did not know whether calling her Elizabeth was due to Plaintiff's race or religion. (Exhibit B – Pl. Dep. P214 L5 - P215 L5, P227 L8-23; Dkt. #18 ¶13)

52. After Plaintiff's termination, she made no efforts to find new employment elsewhere. (Exhibit B – Pl. Dep. P250 L18-20)

53. On June 10, 2022, the EEOC issued a Right-to-Sue Notice (Exhibit B - Pl. Dep. Ex. 23 P10 ) and this action was then filed on September 2, 2022. (Dkt. #1)

Dated: January 30, 2024

Respectfully submitted,

CATHOLIC CHARITIES DIOCESE OF JOLIET

By:    */s/Jeffrey S. Fowler*
       One of Its Attorneys

Jeffrey S. Fowler (6205689)
Laner Muchin, Ltd.
515 North State Street, Suite 2400
Chicago, Illinois 60654
(312) 467-9800
(312) 467-9479 (fax)
jfowler@lanermuchin.com

**CERTIFICATE OF SERVICE**

I, the undersigned attorney, hereby certify that I caused the foregoing LR. 56.1 Statement of Material Facts in the above-captioned matter to be served on the parties of record listed below, U.S. mail, first-class postage prepaid, and through the functions of the Court's ECF system, on this 30th day of January, 2024, addressed to:

> Elizabeth Campbell
> 202 Northridge Ave.
> Bolingbrook, IL 60440
> (630) 674-8799
> prayingmom13@gmail.com

/s/ *Jeffrey S. Fowler*